SWANN, Judge.
The City of Miami Beach charged that a full line grocery store was being operated in violation of its zoning ordinance in the Seacoast Towers South, an apartment hotel owned by Oceancoast Corporation, Inc. A notice of violation was issued by the City and Oceancoast thereafter instituted this suit in which it sought to enjoin the City from enforcing the applicable provision of the zoning ordinance of the City of Miami Beach, Section 4-D of Ordinance 289.
After final hearing, the chancellor entered a final decree in which he found that the equities were with the City and against Oceancoast, and he thereupon dismissed Oceancoast’s action with prejudice and entered final judgment for the defendant City. Oceancoast has properly appealed from this final judgment.
Section 4 — D provides in pertinent part as follows:
“In the ‘REA’ Multiple Family District, no building or land shall be used and no building shall hereafter be erected, constructed, reconstructed or structurally altered which is designed, ar7 ranged or intended to be used or occupied for any purpose, unless otherwise provided for, except for one or more of the following uses: (Emphasis added.)
“1. Any use permitted in the ‘RDE’ Restricted Multiple Family District. (518)
“2. Multiple Family Dwellings or apartments in accord with the area provisions hereinafter defined, and accessory buildings.
3. Hotels.
“4. Hotels consisting of one hundred (100) or more guest rooms may contain cabarets, club cabaret and the following service facilities, to wit: Dance studios, barber shops, beauty shops, dining rooms, restaurants, cof *642 fee shops, tobacco, magazine, newspaper and drug sundry shops, and valet service facilities for guests of the hotel only * * * shall be located and conducted entirely within said hotel building in such manner that no sign, advertisement or other appearance or indication of the existence of such cabaret or service facility, nor any activity of whatsoever nature connected therewith shall be visible at any time or in any manner from any public street, avenue, walk or other public way and such cabaret and service facility shall not be accessible to patrons thereof directly from a public street, avenue, walk or other public thoroughfare, nor indirectly by means of any vestibule, foyer, entryway or room, unless such vestibule, foyer, entryway or room is accessible only from the main entrance and main lobby of the hotel, * * * >>
“5. Accessory uses for tenants only, provided that where dining rooms, restaurants, coffee shops and other places where food or beverages are served, are operated as accessory uses hereunder, such rooms or places shall be entered only from within the building in the same manner and subject to the same requirements, restrictions and conditions as hereinabove provided for service facilities in hotels with one hundred (100) or more guest rooms, and no sign, advertisement or other appearance or indication of the existence of such accessory use or uses shall be visible at any time or in any manner from any public street, avenue, walk or other public way.
“6. Apartment hotels — provision for exterior appearances to be the same as provided in Item No. 4 for hotels. (1280). * * * ”
On appeal, Oceancoast contends that the zoning ordinance is unconstitutional and unenforcible because there was no adequate showing made that it bears substantially on the public health, moral, safety or welfare.
The apartment hotel involved consists of 338 apartments with kitchen and cooking facilities, and is located in the “REA” Multiple Family District. This district extends along the ocean front between Collins Avenue and the ocean, from the park immediately north of the Eden Roc Hotel to the Flamingo Residence Club, and is the only ocean-front strip designated as an “REA” District within the City of Miami Beach.
Miami Beach’s Ordinance 289 was discussed by the Supreme Court of Florida in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941). After reviewing some of the history and background of the ordinance and the City of Miami Beach, the court upheld the validity of the ordinance and indicated that the City might, through the exercise of its police powers, impose restrictions upon the use of property in the interest of the public health, moral, safety and public welfare.
In the case of the City of Miami v. Zorovich, Fla.App.1967, 195 So.2d 31, 37, this court recently stated:

“It has long been settled in Florida that zoning regulations which promote the integrity of a neighborhood and preserve its residential character are related to the general welfare of the community and are valid exercises of the legislative power. * * * ”

It appears clear that the purpose of Section 4 — D, of Ordinance 289, was to promote the integrity of this multiple family neighborhood in Miami Beach and to preserve its residential character. These purposes are related to the general welfare of the community, and are, in our opinion, valid exercises of the legislative power of the City of Miami Beach.
*643 Oceancoast contends that the ordinance is discriminatory inasmuch as a hotel of 100 rooms or more in the “REA” District can contain and operate a grocery store as a permitted use under Paragraph 4 of Section 4-D, and that an apartment hotel is prohibited from doing the same. A close reading of Paragraph 4 of Section 4-D does not sustain this proposition. Nowhere in Paragraph 4 of Section 4-D do we find any specific authority permitting a hotel of 100 rooms or more to operate a grocery store within its premises in such a district. The ordinance does not, therefore, discriminate by permitting a hotel in the “REA” Multiple Family District to contain and operate a grocery store, and by denying an apartment hotel a similar right.
Oceancoast next contends that a grocery store may be contained in and operated by an apartment hotel as an accessory use under Paragraph 5 of Section 4-D. The allowable accessory uses are defined in Ordinance 289, Section 1, as “uses customarily incident to the principal uses as permitted, but not including any commercial activity.” At this juncture, we will not attempt to define the scope of accessories customarily incident to the operation of hotels or apartment-hotels. It appears to be common knowledge, and the court will take judicial notice of the fact, that a hotel usually caters to guests as transient travelers who intend to be on the premises as tenants for a relatively short period of time. On the other hand, an apartment hotel (high rise) is comprised of tenants who reside on the premises for longer periods of time.
The accessory uses customarily incident to the principal use of each are not necessarily the same and the fact that a given accessory use may be allowable in one would not necessarily indicate that it should be allowable in the other. The question of whether a grocery store might be allowable as an accessory use to a hotel of 100 rooms or more is not before us. The issue here is whether a grocery store falls within the uses customarily incident to the operation of an apartment hotel. We do not believe that the ordinance permits, or was intended to permit, the operation of a full line grocery store by an apartment hotel as an accessory use in an “REA” Multiple Family District.
Oceancoast charges that the ordinance is invalid, inasmuch as it amounts to an unlawful and improper delegation of legislative authority. The record does not sustain this contention, inasmuch as the only authority conferred under the ordinance in question was authority to enforce the ordinance and no discretionary rights were given. The validity of zoning ordinances entrusting their enforcement to specified administrative officers has been upheld against the contention that it constituted an improper delegation of legislative power. See 58 Am.Jur. Zoning, § 178; 58 A.L.R.2d 1083, 1086.
For these reasons the judgment appealed from is hereby
Affirmed.