269 So.2d 699 (1972)
CITY OF MIAMI BEACH, a Municipal Corporation Created and Existing under the Laws of the State of Florida, Appellant,
v.
ARTHREE, INC., a Florida Corporation, et al., Appellees.
Howard KASKEL et al., Appellants,
v.
ARTHREE, INC., a Florida Corporation, et al., Appellees.
Nos. 72-36, 72-90.
District Court of Appeal of Florida, Third District.
November 21, 1972.
Rehearing Denied December 20, 1972.
*700 Joseph A. Wanick, City Atty., and Lionel Barnet, Asst. City Atty., for the City of Miami Beach.
Sibley, Giblin, Levenson & Ward, Miami, for Kaskel and others.
Herbert M. Klein, Miami, for the State Beverage Dept. of Florida.
Kovner, Mannheimer, Greenfield & Cutler and Steven J. Rose, Miami, for all other appellees.
Before PEARSON, CHARLES CARROLL and HENDRY, JJ.
PEARSON, Judge.
This is a consolidated appeal brought by the defendant City of Miami Beach and certain intervenors asking review of a summary final judgment entered in favor of the plaintiffs in a declaratory judgment action. The intervenors operate two luxury hotels on the Miami Beach oceanfront; the plaintiffs-appellees operate a building complex known as the Carriage House Apartment Hotel in the same area. The defendant City and the intervenors both urge reversal of the summary final judgment holding that certain provisions of a Miami Beach zoning ordinance are unconstitutional as applied to the plaintiffs-appellees. The issue presented to the trial court was whether the Carriage House Apartment Hotel was entitled to maintain service stores and offices such as are allowed in hotels of over one hundred rooms on the Miami Beach oceanfront hotel strip. We reverse and remand with directions to enter a judgment for the City of Miami Beach.
The amended complaint prayed that the court declare the City's zoning ordinance unconstitutional in its entirety, or, in the alternative, that the court declare the zoning ordinance unconstitutional as applied to the plaintiffs, or, as second alternative, that the court find that the City is estopped by its previous actions from prohibiting the plaintiffs from having the service facilities.
In its answer, the City denied that the plaintiffs were entitled to the relief requested and, furthermore, prayed the court to enjoin the owners and operators of the Carriage House "from conducting illegal uses upon the premises of said apartment building thereby directing the revocation or the withholding of any licenses or permits which allow such illegal uses." The intervenors' complaint stated that they were neighbors and competitors of the Carriage House, and in addition to reiterating the position expressed in the City's answer, prayed for further relief against the Department of Business Regulation, Division of Beverage, State of Florida. In its answer, the Department of Business Regulation essentially took the position that the plaintiffs' liquor license had been issued pursuant to the provisions of the Beverage Law, Fla. Stat. § 561.20(2), F.S.A., and that it "was done after proof of compliance with the Ordinances of the City of Miami Beach; and approved by the Official of Miami Beach authorized to submit such an approval."
The intervenors filed a motion for summary judgment which was denied by the *701 court. Subsequently, the plaintiffs filed their motion for summary judgment. After a hearing on the motion, the court entered its order granting summary final judgment in favor of the plaintiffs and against the defendant City and the intervenors, and found that the zoning ordinance in question, Ordinance No. 289, section 4-D, was "unreasonable, arbitrary, confiscatory and unconstitutional" as applied to the plaintiffs. Consequently, the trial court held that the Carriage House Apartment Hotel was entitled to operate all of the service stores, offices, and other accessory uses allowed to oceanfront hotels in the area. The defendant and the intervenors have appealed from the summary final judgment.
Although the proceedings have been lengthy and complicated, there is actually only one issue in dispute between the parties, and that issue is whether appellees' apartment hotel is required by law to be treated as a hotel for the purposes of determining whether it may operate service stores, offices, and other accessory uses which oceanfront hotels are permitted to operate in the City of Miami Beach. The plaintiffs initiated litigation in the trial court seeking a declaration that since the City had recognized and treated the building complex as a hotel, that it was therefore entitled to the zoning privileges of a hotel. The City maintains that the Carriage House is not entitled to the zoning privileges because it is not actually a hotel as defined by the ordinance. The intervenors are competitors of the Carriage House. They maintain that the Carriage House has not and cannot change its character from an apartment house with a few hotel rooms, to a bona fide hotel entitled to service stores, offices, and other accessory uses. The pivotal holding of the trial court on the motion for summary judgment states:
* * * * * *
"It is apparent that the Plaintiffs in the instant case desire only to maintain stores and offices which are the same as the stores and offices maintained and permitted to be maintained, in the buildings of their immediate neighbors such as the Doral Beach Hotel, the Fontainebleau Hotel, and the others mentioned. Section 4-d of City of Miami Beach ordinance number 289 attempts to restrict the use of the premises of these Plaintiffs so as to prevent them from using them in a manner similar to the uses of their immediate neighbors, and, therefore, it is unreasonable, arbitrary, confiscatory and unconstitutional insofar as its application to these Plaintiffs is concerned."
* * * * * *
The City of Miami Beach urges that there are genuine issues of material fact and that the summary judgment must be reversed. The intervenors maintain that a summary judgment was proper but that the court simply misapplied the controlling law and that the law, if properly applied, requires that a summary judgment be entered for the defendant City and plaintiffs-intervenors. Our review of the record convinces us that there are some issues of fact but that these issues are not genuine issues of material fact.
The Carriage House, which is operated by the appellees, is located on the ocean side of Collins Avenue in Miami Beach, Florida. The intervenors operate the Doral Beach Hotel and the Fontainebleau Hotel which are also located nearby on the oceanfront. All of these structures are located in a zoning area REA, a multi-family district which allows hotels, apartment houses, and apartment hotels. Ordinance No. 289, section 4-D, subsection 4, provides that hotels "consisting of one hundred (100) or more guest rooms" may have certain accessory uses. Some of the accessory uses which have been allowed by the City under subsection 4 include a stock broker's office, a sundry shop, an art gallery shop, a beauty salon, an antiques and accessories shop, a ladies' wear shop, a photography studio, a men's wear shop, and a barber shop. A portion of the text *702 of the Beverage Law, Fla. Stat. § 561.20(2), F.S.A., also makes provision for hotels containing more than one hundred rooms. The text essentially provides that such hotels are entitled to apply to the Department of Business Regulation, Division of Beverage, in order to obtain a liquor license.
The Carriage House operates both as an apartment house for tenants and as a hotel for transient guests. It has several hundred apartments of different types and has thirty rooms which are designed specifically as hotel rooms. For business reasons, the Carriage House has used additional apartments for the housing of transient guests. The record shows that these extra hotel accommodations have been important to the City of Miami Beach. Several times when conventions were planned or in progress, agencies of the City of Miami Beach requested the Carriage House as a hotel to provide more than thirty rooms for the use of conventioneers. In order to efficiently administer its expanded hotel business, the Carriage House has designated more than one hundred of its units as hotel units for the use of transient guests. To this extent, the Carriage House is recognized in the community as a hotel. The shops and services which the Carriage House has installed are the same shops and services as are in other area hotels.
A study of the arguments of the contending parties reveals a fundamental difference in their approach to the problem. The appellants urge that in determining whether a building is a hotel, an apartment house, or an apartment hotel, the court should be governed by the structure of the building itself. On the other hand, the appellees urge that the determination should be made upon the basis of the valid use being made of the building at the time of the application for accessory uses. The trial court, in reaching its decision, adopted the latter view. In so holding, the court stated:
* * * * * *
"Therefore, the Court has accepted the affidavits and exhibits as true and finds that there is no genuine issue of any material fact as to the question of whether or not the Carriage House does operate a bona fide hotel containing one hundred or more sleeping and guest room accomodations [sic]."
* * * * * *
Ordinarily, in determining the meaning and application of an ordinance, the definitions provided by the ordinance itself are a matter of first consideration. The ordinance under attack is Ordinance No. 289 of the City of Miami Beach as amended to March 1, 1969.[1] The ordinance contains the following salient definitions:
* * * * * *
"APARTMENT: A dwelling designed for occupany otherwise than as a one-family dwelling, or a two-family dwelling. The term `Multiple Dwelling' shall be understood to include apartment houses, bungalow courts, and all other family dwellings of similar character, but not to include hotels or apartment hotels.
"APARTMENT HOTEL: An apartment building, under resident supervision, which maintains an inner lobby through which all tenants must pass to gain access to the apartments and which may furnish dining room service for tenants only."
* * * * * *
No definition appears in the portions of the ordinance introduced into evidence for the term "hotel." However, in section 4-D, subsection 4, the following appears:
* * * * * *
"4. Hotels consisting of one hundred *703 (100) or more guest rooms may contain cabarets, club cabaret and the following service facilities, to wit: Dance studios, barber shops, beauty shops, dining rooms, restaurants, coffee shops, tobacco, magazine, newspaper and drug sundry shops, and valet service facilities for guests of the hotel only, ...".
* * * * * *
We are impressed with the fact that the essential difference between a hotel and an apartment hotel is that the primary business of a hotel is to provide furnished rooms for transient guests, while an apartment hotel provides accommodations with kitchen and housekeeping facilities for more permanent tenants. The State of Florida has enacted legislation which includes a recognition of this distinction. Fla. Stat. § 509.242(1)(a), (b), F.S.A., defines the terms "hotel" and "apartment hotel" as follows:
"(a) Hotel.  Any building or group of buildings containing sleeping room accommodations for twenty-five or more guests and providing the services generally provided by a hotel and recognized as a hotel in the community in which it is situated, or by the industry, is declared to be a hotel.
"(b) Apartment hotel.  Any establishment which meets the requirements of a hotel, but also has units with kitchen equipment and housekeeping facilities, is declared to be an apartment hotel."
With these distinctions in mind, it is both logical and useful for the City to legislate that hotels may operate service facilities for transient guests which are not as essential to more permanent tenants of an apartment hotel. If, as the appellees contend, zoning distinctions should be enforced based only on the current use of a particular building, then it will become impossible to draw a distinction between a hotel and an apartment hotel. There is no dispute that the Carriage House was structurally and architecturally planned as an apartment complex with thirty hotel rooms. As far as the record shows, there has been no structural change in the building or in its rooms, and thus the only real change involves the Carriage House using some of its apartments as hotel rooms. The fact that it now regularly utilizes these apartments as hotel rooms does not alter the fact that the change is simply one of business policy, a change that could be reversed at any time.
In light of the definitions contained in Ordinance No. 289 and in Fla. Stat. § 509.242(1)(a), (b), F.S.A., and in view of the fact that the applicability of zoning provisions must have some permanence, we think that the determination of whether a given building is an apartment hotel or a hotel must be made upon the basis of the structure rather than upon changes in the building's use.
If it is accepted that there is a proper legislative distinction between apartment hotels and hotels as set forth in the ordinance, then, in the light of that distinction, we should examine the trial judge's conclusion that it is unreasonable and unconstitutional to restrict the accessory uses on the premises of the appellees' apartment hotel when their immediate neighbors, the intervenor hotels, are allowed the same accessory uses. Once it is accepted that a proper legislative distinction exists, the question then becomes whether there is a logical connection between the exercise of the police power through zoning regulation for the public welfare, and the restriction of service stores and other accessory uses to hotels. We have previously considered that question and held that there is a reasonable relationship between the public welfare and an ordinance which prohibits service stores in apartment houses. Oceancoast Corp. v. City of Miami Beach, Fla.App. 1967, 203 So.2d 640, 643. We adhere to that holding, and therefore hold that the trial judge mistakenly applied the applicable law in the judgment which is appealed.
*704 The appellees' remaining legal position urges that since the City of Miami Beach has recognized the Carriage House as a hotel, the City is now estopped to deny the Carriage House the accessory uses of a hotel. Although this argument was not adopted by the trial judge in his judgment, it must be considered nevertheless. The appellees insist that the City cannot blow hot and cold at the same time, and that a court of equity ought not allow the City to enforce its zoning ordinance so as to deprive the Carriage House of the accessory uses, while the City recognizes that the Carriage House performs the functions of a hotel. Although the argument seems at first examination to follow fair play and justice, we think that it does not create a basis for a court order preventing the City from exercising its police power. In order to intelligently consider the effect of the application of the doctrine of estoppel to the action of a city, we must take judicial cognizance of the fact that a modern city consists of many departments performing varied functions for its citizens. It is not always possible for the right hand to know what the left hand is doing. Therefore, the legally binding actions of a city are usually those of its council or governing body. The appellees argue that the City recognized the Carriage House as a hotel when the City's Convention Bureau requested the Carriage House to reserve more than thirty rooms for various organizations planning conventions in Miami Beach, and when the City's Tourist Development Authority sent the Carriage House a congratulatory letter on its hospitality as a hotel. However, the actions of the City's Convention Bureau and Tourist Development Authority cannot be equated with the legally binding legislative action of the City itself as expressed by the Miami Beach City Council when it passed Ordinance No. 289. It is a prerogative of a city to exercise its police power by enforcing its duly enacted zoning ordinances. Under these circumstances, we hold that the City of Miami Beach is not estopped to enforce Ordinance No. 289 because of the actions of its employees. See Dade County v. Bengis Associates, Inc., Fla.App. 1972, 257 So.2d 291; Greenhut Construction Company v. Henry A. Knott, Inc., Fla.App. 1971, 247 So.2d 517; City of Miami Beach v. Meiselman, Fla.App. 1968, 216 So.2d 774.
In light of this analysis, we hold that the summary final judgment entered in favor of the plaintiffs-appellees must be reversed, and the trial court is directed to enter a judgment for the appellant City. We further hold that it does not appear without genuine issue of material fact that the plaintiffs-intervenors are entitled as a matter of law to a judgment against the Board of Business Regulation of the State of Florida. Accordingly, the trial court is directed to take such further action as it may deem necessary to determine the issue between the plaintiffs-intervenors and the Board of Business Regulation of the State of Florida.
Reversed and remanded with directions.
HENDRY, J., dissents.
NOTES
[1] We are informed that the City of Miami Beach has passed a new zoning ordinance which became effective October 13, 1971. This zoning ordinance may have additional definitions which will clarify its application in the future. However, since the new zoning ordinance became effective after the date of the trial court's final judgment herein, it will not be further considered.