DOWNEY, Judge.
Florida East Coast Railway Company sued the City of Belle Glade to enjoin the City from constructing and maintaining a railroad crossing across the railway’s right-of-way in the City of Belle Glade without complying with the provisions of Section 338.21, Florida Statutes (1973)[1]. The Railway contended that before the City could open such a crossing Section 338.21(3), Florida Statutes (1973), required it to apply to and obtain a permit from the Department of Transportation. The trial court granted a permanent injunction in accordance with the prayer of the complaint and the City has perfected this appeal.
Some additional facts reflected by the record are essential to a complete understanding of the issues presented.
In 1972 the City filed an eminent domain proceeding to acquire an easement across the Railway’s right-of-way for the proposed crossing involved in this litigation. Although the Railway asserted as a defense the failure of the City to comply with Chapter 72-165, Laws of Florida (which amended Section 338.21 by adding subsection (3) thereto), the court entered an Order of Taking which granted the City a perpetual easement over the Railway’s right-of-way. However, as the appellant City sets forth in its brief, the 1972 eminent domain is still pending.
In 1975 the City notified the Railway that it intended to commence work on the installation of a road crossing on said easement. That notification precipitated this injunction suit by the Railway.
The City contends that the trial court erred in granting the injunction because: a) Section 338.21, Florida Statutes (1973), the statute which, among other things, authorizes the Department of Transportation to require a city to obtain a permit before opening and closing railroad crossings, is *875 unconstitutional; b) the court previously held in the proceedings preceding the entry of the Order of Taking that Section 338.21, Florida Statutes (1973) was not applicable to this crossing; and c) Section 338.21, Florida Statutes (1973), is not applicable to the proposed crossing because of a savings clause contained therein. We have considered all points raised by the City and found them to be without merit.
In its first point the City contends Section 338.21 is unconstitutional because it is vague and contains inadequate guidelines in delegating regulatory authority. In order to test this thesis it is necessary to consider other sections of the statutes which are in pari materia with Section 338.-21. That section is included in a chapter that is but one part of the six part Florida Transportation Code found in Chapters 334 to 339, inclusive, of Florida Statutes 1973. Section 334.02, Florida Statutes (1973) is a “Declaration of legislative intent.” That declaration sets forth numerous legislative guidelines for the Department of Transportation to follow in carrying out its functions under the Florida Transportation Code. Other limitations upon the Department’s exercise of this authority are found in Chapter 338. For example, prior to the adoption of rules and regulations relating to the opening and closing of railroad crossings, the Department is required to give notice thereof and hold public hearings pursuant to the provision of the Administrative Procedure Act, Section 120, Florida Statutes (1973). See Section 338.21(5). Suffice it to say that our study of the entire Florida Transportation Code convinces us that the constitutional attack upon Section 338.21, Florida Statutes (1973), is unfounded.
Another point which warrants discussion is the City’s contention that the applicability of Section 338.21, Florida Statutes (1972), was decided adversely to the Railway by the Order of Taking entered in the eminent domain proceeding between the same parties. This position is unsound. Because the eminent domain proceeding is still pending, the Order of Taking, is not a final appealable order. Central Hanover Bank & Trust Co. v. Pan American Airways, Inc., 126 Fla. 736, 171 So. 808 (1937). And, contrary to the City’s position, the Railway had no duty to take an interlocutory appeal from the Order of Taking. (Fla. App. Rule 4.2a, which governs interlocutory appeals, starts out by providing that “Appeals may be prosecuted in accordance with this rule . . . .” It goes on to provide that “Nothing in this rule shall preclude the review of an interlocutory order in a civil action on appeal from the final judgment . .”) Moreover, it is not at all clear that the Railway had the right to an interlocutory appeal from the Order of Taking. See Camp Phosphate Company v. Marion County, 194 So.2d 302 (Fla. 1st DCA 1967); Trien v. Dade County, 222 So.2d 456 (Fla. 2d DCA 1969). Of course, in order for a matter to be res judicata it must be the subject of a final judgment. See 19 Fla. Jur., Judgments And Decrees, § 132.
Finally, the City urges that the savings clause of Section 2 of 72-165, Laws of Florida (1972), which provides: “All laws or parts of laws in conflict herewith which are not currently in litigation are repealed.” makes Section 338.21, Florida Statutes (1973), inapplicable to the proposed crossing. We reject this interpretation of the statute as did the trial judge. The clause in question refers to pending litigation involving statutes in conflict with Chapter 72-165. Thus, it does not refer to litigation such as the pending eminent domain suit.
Accordingly, since no error has been demonstrated the judgment appealed from is affirmed.
ALDERMAN, J., and DURANT, N. JOSEPH, Associate Judge, concur.

. “338.21 Elimination of railway-highway crossing hazards.—
“(1) The department of transportation, in cooperation with the several railroad companies operating in the state, shall determine and adopt a program for the expenditure of moneys now available, and of the moneys to become available, for the construction cost of projects for the elimination of hazards of railway-highway crossings.
“(2) Every railroad company maintaining a railway-highway crossing shall, upon reasonable demand and notice from the department, install maintain, and operate at such crossing an automatic flashing light signal and ringing bell, the design of which shall be approved by the department so that it will give to the users of such road reasonable warning of the approach of trains or cars on the tracks of said railroad company, the cost of such signals and the expense of installation to be paid from the moneys described in subsection (1).
“(3) The department shall have regulatory authority over all public railroad crossings in the state, including the authority to issue a permit for the opening and closing of such crossings.
“(4) The department is authorized to regulate the speed limits of railroad traffic on a municipal, county, regional, or statewide basis.
“(5) Prior to the adoption of any rule or regulation opening or closing such crossings or of any rule or regulation fixing such speed limits, due notice shall be given and a public hearing shall be held by the secretary of the department or his duly authorized hearing officer, pursuant to the provisions of chapter 120 Florida Statutes, the Administrative Procedure Act.
“(6) Review of such rules and regulations shall be by writ of certiorari as provided in chapter 120, the Administrative Procedure Act. Jurisdiction to enforce rules and regulations so adopted shall be as provided in § 316.016 Florida Statutes, and any penalty for violation of a rule and regulation so adopted shall be imposed upon the railroad company. Nothing herein shall prevent a city, county, or other public authority from passing an ordinance relating to the blocking of a crossing as provided in chapter 351.”