482 So.2d 479 (1986)
BENNETT M. LIFTER, INC., d/b/a the Marco Polo Hotel; Lifter, Inc. d/b/a the Waikiki Hotel, Appellants,
v.
METROPOLITAN DADE COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 85-642.
District Court of Appeal of Florida, Third District.
January 21, 1986.
Smith & Mandler and Patricia M. Silver, Miami Beach, for appellants.
Robert A. Ginsburg, Co. Atty. and Robert L. Krawcheck, Asst. Co. Atty., for appellee.
Before BARKDULL, HUBBART and FERGUSON, JJ.
*480 BARKDULL, Judge.
This appeal involves the validity of a Dade County zoning regulation pertinent to a hotel/motel use district as it relates to condominium conversions. The trial judge, upon a constitutional attack, found the ordinance to be constitutional. His final judgment reads as follows:
"THIS CAUSE is before the Court upon a Complaint for Declaratory and Injunctive Relief challenging the validity of Dade County Ordinance 84-46, § 33-222.1.1 (hereinafter `the Ordinance') of the Code of Metropolitan Dade County, Florida (hereinafter `County Code'). The Court has jurisdiction pursuant to Chapter 86, Fla. Stat.
"This matter originally came on for hearing upon the Plaintiff's Motion for Temporary Injunction prohibiting Dade County from enforcing the Ordinance. The Court conducted extensive evidentiary hearings, after which it was advised, through stipulation of counsel, that both sides have rested with regard to presenting any further evidence on the entire complaint, without prejudice to present evidence upon the County's counterclaim. Based upon the considerable record before the Court, legal memoranda, argument of counsel, and being otherwise duly advised in the premises, the Court finds as follows.
"Ordinance 84-46 was enacted by the County Commission as an addition to the RU-4A zoning district regulations, in response to a proliferation of changes in use of former hotel and motel properties located in that district. The RU-4A district is unique in Dade County in that it permits essentially two kinds of residential uses: 1) hotel and motel uses, and 2) apartment and apartment-hotel and apartment-motel uses.
"In the RU-4A district, hotels and motels developed for exclusive transient use receive a 50% density advantage compared to other uses. Hotels and motels also receive a minimum benefit of 50% in the amount of off-street parking required to be provided.
"The rationale behind the parking and density advantages allowed exclusively transient uses is that such uses involve tourist and other temporary occupants. It is assumed that, in general, such transients will have neither as many family members residing in, nor as many guests visiting, each unit as would be expected with a more permanent use.
"Prior to the enactment of Ordinance 84-46, the Board of County Commissioners was presented with a substantial body of information indicating, among other things, the following: 1) numerous hotels and motels in the RU-4A zoning district had either undergone, or were in the process of undergoing, a fragmentation of possession and ownership patterns through long-term leases, subleases, or condominium ownership; 2) this fragmentation was often accompanied by a change in use from the exclusive hotel and motel uses; and 3) many of these properties were in violation of the County's zoning code and in particular the higher density and parking requirements applicable to apartment-type uses. The County Commission studied the matter extensively through a number of hearings and other fact-finding activities, after which it adopted Ordinance 84-46.
"The Ordinance does not enact new substantive requirements for the RU-4A zone, nor does it prohibit the fragmentation of ownership and possessory interests or any use previously permitted in the RU-4A zoning district. Instead, it creates an administrative procedure for assuring that the pre-existing substantive provisions of the County Code are not violated by former hotels and motels undergoing `subdivision.'[1] The Ordinance is designed to enable the County to prevent Code Violations early in the subdivision process so that it will be unnecessary at a later time, to bring litigation against a multitude of individual *481 purchasers who may, unwittingly, be using their units unlawfully.
"The ordinance requires subdividers of hotels and motels to give written notice of subdivision to the building and zoning director. Before a subdivided property may receive any new permits or approvals from the County, the owner must demonstrate continued compliance with the pre-existing Code provisions. Pursuant to the ordinance, the administrative mechanism for demonstrating compliance was promulgated by the Director of the Building and Zoning Department and approved by the Board of County Commissioners. Resolution R-1003-84.
"The ordinance further provides that a subdivided hotel or motel is presumed to have undergone a change of use to non-hotel or non-motel use, however, this presumption is rebuttable through an administrative hearing proceeding which is subject to judicial review. The ordinance contains liberal `grandfather' provisions for subdivision operations in progress prior to its enactment, however, these provisions are not in issue. Finally, the Ordinance contains a standard severability provision.
"The Plaintiffs in effect contend that the validity of the ordinance may only be measured by the `record' before the County Commission which must include formal studies of the matter. Although this is not the correct test for the validity of police powers legislation, the Court finds that the County Commission did extensively study the matter, and that the ordinance is substantiated both on the record before the County Commission and by the totality of the evidence presented to the Court to date.
"Rather than requiring the prior completion of a formal study or the establishment of a particular record as in judicial proceedings, the courts have judged the findings and actions of the legislative arm of government by the following standards:
Such legislative ascertainments and determinations of facts, unless plainly contrary to those matters of common knowledge of which the courts may take judicial notice, are entitled to such weight as to require clear allegation and proof showing the contrary before the courts would be justified in overturning them, thus casting the burden of allegation and proof upon the party attacking such legislative determinations; it being the general rule that all reasonable presumptions will be indulged in favor of the constitutionality of a legislative act.

Miami Home Milk Producers Assoc. v. Milk Control Board, [124 Fla. 797] 169 So. 541, 542 (Fla. 1936).
Extrinsic evidence necessary to overturn the presumption of legislative validity `must be clear, cogent and conclusive.' Rosche v. City of Hollywood, 55 So.2d 909, 913 (Fla. 1952).
"In a 1983 decision upholding the validity of a Dade County ordinance imposing stringent regulations upon second-hand dealers in precious metals, the third district court of appeal recognized the following applicable legal standards:
Courts employ certain well-settled tests to determine the validity of legislation enacted for the protection of the public health, safety, welfare, or morals. All legislation will be presumed constitutional if there is any reasonable theory to that end, Hamilton v. State, 366 So.2d 8 (Fla. 1978); Golden v. McCarty, 337 So.2d 388 (Fla. 1976); Bonvento v. Board of Public Instruction of Palm Beach County, 194 So.2d 605 (Fla. 1967) legislation is valid if it may be reasonably construed as expedient for the protection of the public health, safety, welfare or morals, Newman v. Carson, 280 So.2d 426 (Fla. 1973); where the police power is exercised in the area of economic regulation, it is valid if the `means utilized bear a rational or reasonable relationship to a legitimate state objective,' Belk-James, Inc. v. Nuzum, 358 So.2d 174, 175 (Fla. 1978); and a court may not substitute its judgment as to the wisdom and policy of the law for that of the legislative body, Holley v. Adams, 238 So.2d 401 (Fla. 1970); State v. Reese, 222 So.2d 732 (Fla. 1969). The tests employed to determine *482 the validity of an ordinance and a statute are nearly identical. See City of Miami v. Keyfetz, 92 So.2d 798 (Fla. 1957); State v. Sawyer, 346 So.2d 1071 (Fla. 3d DCA 1977).
Jones and Metropolitan Dade County v. Gray and Sons, 430 So.2d 8 at 10.
"Regarding zoning ordinances adopted by legislative bodies such as the Board of County Commissioners, if the enactment `is fairly debatable it should be upheld.' Oka v. Cole, 145 So.2d 233, 235 (Fla. 1962). The `fairly debatable test' has been articulated as follows:
An ordinance may be said to be fairly debatable when for any reason it is open to dispute or controversy on grounds that make sense or point to a logical deduction that in no way involves its constitutional validity.
City of Miami Beach v. Lachman, 71 So.2d 148 at 152 (Fla. 1954).
"The information gathered by the County Commission was that a number of the former hotel and motel properties in the RU-4A district had changed from transient to non-transient use and were in violation of the parking and density requirements of the County Code. This information before the County Commission is corroborated by extensive evidence presented to the Court and had also been verified in large part by the County's Building and Zoning Department which, as a result, supported the drafting and adoption of Ordinance 84-46. Commission hearings also revealed that purchasers of long-term interests in hotels and motels were being misinformed that they could permanently reside in former hotel and motel units.
"The representative of Plaintiff BOP, Inc. testified that the La Playa de la Varadero Motel is an example of its `conversion' activities. In fact, even before that property was fully sold, there were permanent residents on the premises. Moreover, the individual handling the alleged ongoing motel operation testified that the front desk and switchboard had been eliminated and the area enclosed as an office. This individual, who accepts voluntary private real estate listings from unit owners, requires a $300 security deposit from each prospective applicant and advises: `You have to keep in mind that we are now a condominium, not a motel.' (emphasis supplied).
"Further evidence demonstrates that there has in fact been overcrowding of subdivided motel rooms, a worsening of parking problems in the area, and the unavailability of former hotel and motel units to the transient public seeking lodging.
"There is no doubt that zoning regulations are valid legislative functions of the Board of County Commissioners of Dade County, Florida (see Art.I, § 1.01(a)(12), Charter of Metropolitan Dade County, Florida). Nor is there any doubt that the regulation of land use, density, and parking are properly within the zoning power. The ordinance in question, as a means of assuring compliance with substantive zoning regulations, bears a reasonable relationship to the public health, safety and welfare and is supported by matters presented to the Board of County Commissioners as well as to the Court.
"Plaintiffs assert that Ordinance 84-46 should be overturned on the basis of Innkeepers Motel Lodge, Inc. v. City of New Smyrna Beach, 460 So.2d 379 (Fla. 5th DCA 1984) which overturned a `flat density cap, which cannot be justified by any particular study and which does not allow for the possibility of variance.' Id. at 380. In particular, the Plaintiffs challenge the 5% and six-month provision contained in the definition of `subdivision.'
"Unlike the ordinance at bar, Inkeepers did not involve the action of a properly constituted county commission which studied the matter extensively, but involved a citizen initiated referendum imposing a flat density cap with no substantiation therefor and no possibility of variance.
"The six-month provision and the 5% provisions used to define `subdivision' in Ordinance 84-46, are related to the pre-existing Code provisions. Before the enactment of Ordinance 84-46, the County Code contained *483 density benefits based upon a development for exclusive transient use. As explained by the Building and Zoning Director, under the pre-existing Code, even taking one unit out of transient use, would constitute a violation of the density provisions. The 5% provision of Ordinance 84-46 therefore allows reasonable leeway for units being used as residences for hotel and motel management. The six-month provision of the Code is also a reasonable line of demarcation between temporary or transient and more permanent occupancy for purposes of creating a rebuttable presumption. See § 125.0104, 212.03, and 212.0305, Fla. Stat. Also see Metropolitan Dade County v. The Golden Nugget Group, 448 So.2d 515 (Fla. 3d DCA 1984), affirmed, Golden Nugget Group v. Metropolitan Dade County, 464 So.2d 535 (Fla. 1985).
"The Plaintiffs have asserted a plethora of additional legal challenges to various aspects of the ordinance, each of which fails to withstand careful analysis.
"Plaintiffs, asserting that Ordinance 84-46 conflicts with some 16 provisions of Florida Statutes, contend, that the Ordinance `prohibits' activities otherwise unconditionally authorized by state law. This is not the case. While the Ordinance requires a demonstration of continued compliance with the County Code as a prerequisite to new County approvals and creates a rebuttable of presumption of change of use, it does not change the underlying substantive provisions. These provisions include the definitions of `hotel' and `motel' and the transiency requirements which the Plaintiffs do not challenge. Therefore, to the extent that an activity is a substantive violation of the County Code, this was the case before the enactment of the Ordinance and is not in issue. Moreover, administrative remedies and judicial review are available to correct any improper application of the Ordinance or the Code. Milich v. Metropolitan Dade County, 263 So.2d 263 (Fla. 3d DCA 1972).
"Plaintiffs contend the Ordinance conflicts with, and is pre-empted by, the Florida Condominium Act, Chapter 718. Preemption by, and conflict with, Chapter 718 were addressed in the case of City of Miami Beach v. Rocio Corporation, 404 So.2d 1066 (3d DCA 1981):
... We must decide whether condominium conversion is a subject `expressly pre-empted to state ... government' and therefore excepted from the city's powers ... nowhere, either in its statement of purpose or other provisions does Chapter 718 expressly pre-empt the subject to the state. Id. at 1068-1069. (emphasis supplied)
* * * * * *
An ordinance which supplements a statute's restriction of rights may co-exist with that statute.

Id. at 1070.
The nature of `conflict' is further discussed in Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (Fla. 3d DCA 1976) which upheld another Dade County ordinance:
The word `conflict' in Article VIII, Section 11(5) has been construed to mean `contradictory in the sense of legislative provisions which cannot co-exist.' E.B. Elliott Advertising Co. v. Metropolitan Dade County, 425 F.2d 1141, 1150 (5th Cir.1970). State ex rel. Dade County v. Brautigam, 224 So.2d 688 (Fla. 1969). Legislative provisions are inconsistent if, in order to comply with one provision, a violation of the other is required. In the E.B. Elliott Advertising Co. case, the sole test of conflict for purposes of pre-emption is the impossibility of co-existence of the two laws. Courts are therefore concerned with whether compliance with a County ordinance requires a violation of a state statute or renders compliance with a state statute impossible.
"Ordinance 84-46 is said by Plaintiffs to prohibit the creation, sale and leasing of condominium units in violation of § 718.102(b) and § 718.104(2), Fla. Stat. The Ordinance does not prohibit these activities but regulates use. The Ordinance is further asserted to divest the Division of Florida Land Sales and Condominiums of its *484 powers under § 718.501. This statute empowers the Department with regard to `this chapter [§ 718, F.S.] and rules promulgated pursuant hereto,' whereas the powers of the County Director of Building and Zoning are limited to the Dade County Code. The Plaintiffs' argument, if correct, means that the County cannot subject hotels, motels, and apartment facilities to its building and zoning regulations. Such structures could then be built anywhere and without any County control over the manner and quality of construction, let alone over occupancy, parking and density. The Court finds no conflict with the statute.
"Plaintiffs contend the ordinance conflicts with the filing requirements of § 718.502(1), Fla. Stat., and with § 718.502(4) which obviates the need for duplicate filing with the state. The Plaintiffs' contention that the same information is required to be filed with the Building and Zoning Director is erroneous. Further, § 718.502(4), Fla. Stat., does not provide that developers need not meet other requirements, only that they need not file the same documents twice with the state.
"Plaintiffs contend that Ordinance 84-46 conflicts with § 718.507, Fla. Stat., which, essentially, prohibits zoning regulations which discriminate against condominiums. It is clear that the ordinance in question is equally applicable to all building and improvements of the same kind whether the form of ownership is condominium, long-term lease, long-term sublease, time sharing, or otherwise. This is evident from the language of the ordinance, from the testimony presented, and even from the face of the complaint which alleges that the ordinance applies to various kinds of ownership interests.
"For reasons similar to those discussed above, the Court also finds incorrect the Plaintiffs' contentions that the ordinance conflicts with §§ 718.504(4), (13), (16), and § 718.508, Fla. Stat.
"The Plaintiffs' conflict argument relies heavily upon the case of City of Miami Beach v. Rocio Corporation, supra, which held that several ordinances of the City of Miami Beach were invalid as being in conflict with the Condominium Act. The Court has reviewed that decision as well as the actual ordinances held invalid by Rocio and finds that the Ordinance at bar does not suffer the same defects. The ordinances invalidated in Rocio were directed only at condominiums and, were, by their own terms, `intended to stop' certain conversions to condominium ownership which were expressly made `unlawful'. Having found these ordinances invalid, the Court was careful to advise that the Condominium Act did not preempt non-conflicting local legislation:
We find no pre-emption of the subject condominium conversion. The City is therefore permitted to exercise its power on that subject unless otherwise precluded. Id. at 1069
"The Court is likewise unpersuaded by the Plaintiffs' argument that the ordinance conflicts with certain provisions of the Florida Residential Landlord and Tenant Act. § 83.40, et seq., Fla. Stat. The ordinance in question is solely and exclusively a zoning regulation governing the relationship between Dade County and the users of property. Neither the intent nor the effect of the ordinance is to determine or control the landlord-tenant relationship between private parties.
"Plaintiffs' last series of conflict arguments is related to Ch. 509, Fla. Stat., `Public Lodging and Public Food Service Establishments.' The area regulated by Chapter 509 and the area regulated by local zoning regulations are two spheres of regulations whose co-existence is not disturbed by Ordinance 84-46. Before and after the enactment of the Ordinance, both transient and apartment uses were allowed in the RU-4A district with no change in substantive requirements.
"The Court has reviewed the other cases cited by Plaintiffs. In City of Miami Beach v. Arlen King Cole Condominium Assoc., Inc., 302 So.2d 777 (Fla. 3d DCA 1974), the city sought to prohibit condominium ownership of a non-conforming hotel-apartment, because the property did not *485 meet current more restrictive off-street parking requirements. Ordinance 84-46, before this Court, does not prohibit condominium ownership. Further, in Arlen, unlike the case at bar, the trial judge had `found that the use of the property had not changed and the record support[ed] this finding.' Id. at 799. This Court is faced with abundant evidence that pre-existing, exclusive hotel and motel uses, in general, and certain of Plaintiffs' properties, in particular, clearly underwent a use change upon being subdivided.
"The presumption created by the Ordinance is not conclusive and, if inapplicable to a given property, can be rebutted through the administrative process including judicial review thereof. Based upon these facts establishing a rational connection between subdivision and change of use, the Court cannot hold that the Ordinance created an improper presumption:
Legislation, whether by statute or ordinance, may provide that one fact or set of facts may be presumptive or prima facie evidence of another, thereby shifting the burden of proof, needing only to comply with the rule that there must be a rational connection between the fact proved and the ultimate fact presented so that the inference of one from proof of the other is not unreasonable and arbitrary.
Cooper v. City of Fort Lauderdale, 203 So.2d 16, 18 (Fla. 4th DCA 1967).
"City of Miami Beach v. Arthree, Inc., 269 So.2d 699 (Fla. 3d DCA 1972), also relied upon by Plaintiffs, involved a City of Miami Beach ordinance which allowed ancillary uses in hotels having more than 100 rooms. The Court granted the city's petition to enjoin such ancillary uses by the Carriage House Apartment Hotel which had been constructed with a lesser number of hotel rooms.
"Although the Court in Arthree recognized the desirability of a simple and permanent test based upon building structure, the essential holding was that the definitions in the city code were controlling: `the definitions provided by the ordinance itself are a matter of first consideration,' Id. at 702. The Court made its decision `in light of the definitions contained in Ordinance No. 289,' id. at 703, as well as state statutes. This Court cannot accept Plaintiffs' contention that Arthree requires that structure alone is determinative of use regardless of definitions contained in the County Code and regardless of actual use. Such a rule could render zoning regulations meaningless. For example, in the reverse of the facts at bar, buildings retaining the structure of apartments could be converted to hotels and motels, or even commercial or industrial uses with impunity, regardless of the use limitations of the zoning district.
"Plaintiffs further rely upon City of Hallandale v. Prospect Hall College, Inc., 414 So.2d 239 (Fla. 4th DCA 1982), involving a Broward County oceanfront motel purchased by the college for dormitory use. When a dispute arose over zoning violations, the college opened the facility to the public and provided a 24-hour desk clerk. In addition to factual differences from the case at bar, the Hallandale case turns on provisions of the city code and is not controlling here. The court observes, however, that had a similar dispute arisen in Dade County it could have been resolved administratively pursuant to the provisions of Ordinance 84-46, one of the practical objections of the Ordinance being the reduction of unnecessary litigation.
"Plaintiffs contend that the Ordinance is void because of lack of specificity of the documentation required for demonstrating compliance with the Code once a subdivision has occurred and for lack of standards by which to ascertain whether the presumption of change of use has been rebutted.
"Pursuant to the ordinance, the procedures for submitting documentation to demonstrate continued compliance with the Code were promulgated by the Director of Building and Zoning and approved by the Board of County Commissioners. Resolution R-1003-84. The documentation to be utilized is quite specific.
*486 "As to whether a property continues to be a hotel or motel, the definitions and requirements provided by the Code (§ 33-1(58), (71), § 33-222.1) are clear and are not challenged by the Plaintiffs. The Court also notes that Resolution R-1003-84 sets forth a specific list of documentation which is relevant and material to the issue of change of use. The Ordinance, when properly read in pari materia with the remainder of Chapter 33 of the Code, of which it is an integral part, is not void for failure to prescribe standards or for vagueness.
"Plaintiffs contend that the ordinance should be held invalid because it applies to the RU-4A classification throughout the County rather than only the Sunny Isles area where their properties are located. Although Plaintiffs' standing to raise this issue is questionable, clearly, the County has the power, if not the responsibility, to see that the provisions of the RU-4A zoning district are equally applicable to all parts of the County. Moreover, the record establishes that the County Commission received testimony concerning the potential subdivision of hotels and motels in RU-4A zoning districts located outside of the Sunny Isles area, justifying countywide application of the Ordinance.
"Finally, Plaintiffs contend that the procedures adopted by Ordinance 84-46 should also have been applied to zoning districts other than RU-4A which permit hotel and motel uses. The Building and Zoning Director explained that the only other zoning district where hotels and motels are permitted as a matter of right are zoned industrial. Because hotels in industrial zones are not located in resort areas and serve primarily business travelers, there was no subdivision and hence no need for a similar ordinance. It is therefore
"ORDERED and ADJUDGED that Dade County Ordinance 84-46 is valid and constitutional, and the Plaintiffs are not entitled to injunctive relief. The Court retains jurisdiction to award costs and to adjudicate the Defendant's counterclaim."
Among other things, the appellant urges that the final judgment was erroneously entered because the trial court misapprehended the legal effect of the evidence, that the ordinance conflicts with state law and other county ordinances and that the ordinance was arbitrarily enacted without a substantial relation to the public health, safety and welfare, plus being ambiguous. We have examined each of the points urged for reversal and find them to be without merit. Oka v. Cole, 145 So.2d 233 (Fla. 1962); City of Miami Beach v. Lachman, 71 So.2d 148 (Fla. 1954); Metropolitan Dade County v. Golden Nugget Group, 448 So.2d 515 (Fla. 3d DCA 1984); Jones v. Gray & Sons, 430 So.2d 8 (Fla. 3d DCA 1983); Dade County v. United Resources, Inc., 374 So.2d 1046 (Fla. 3d DCA 1979); Tony's Fish Market of Ft. Lauderdale, Inc. v. State, Board of Business Regulation, 358 So.2d 125 (Fla. 1st DCA 1978); City of Belle Glade v. Florida East Coast Railway Company, 344 So.2d 873 (Fla. 4th DCA 1977); Jordan Chapel Freewill Baptist Church v. Dade County, 334 So.2d 661 (Fla. 3d DCA 1976); Walker v. Indian River County, 319 So.2d 596 (Fla. 4th DCA 1975); Plantation Datsun Inc. v. Calvin, 275 So.2d 26 (Fla. 1st DCA 1973). Therefore, the final judgment under review be and the same is hereby affirmed.
Affirmed.
NOTES
[1] The Ordinance contains the following definition: "[T]he term `subdivision of a hotel or motel' shall mean the sale, conveyance, or long-term lease or sublease (for more than six (6) months) of five percent (5%) or more, cumulatively, of the units in a hotel or motel by the same seller, lessor, or sublessor. This definition is not applicable to the transfer of an entire hotel or motel to the same transferee." § 33-221.1.1(a)(1).