## Carter H. Harrison, Mayor, v. The People of the State of Illinois, ex rel. David Stern.

### Gen. No. 12,003.

1. PAWN-BROKERS—*when ordinance regulating business of, valid.* The provisions of the ordinances of the city of Chicago requiring reports of articles pawned to be made to the police department and prohibiting the redemption of such articles within 24 hours thereof, are, as well as other provisions of such ordinances involved in this cause, valid.

2. MANDAMUS PROCEEDING—*when does not lie.* A municipality cannot be compelled to grant a license to a pawn-broker where a former license issued to him was, for good cause, revoked.

3. LICENSE—*when revocation of, proper.* The revocation of a pawn-broker's license is lawful where it appears that he has been convicted of a violation of an ordinance regulating the business of pawn-brokers, and this notwithstanding an appeal was taken and pending from such conviction.

*Mandamus* proceeding. Appeal from the Superior Court of Cook
County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this
court at the October term, 1904. Reversed. Opinion filed June 15,
1905.

**Statement by the Court.**  May 28, 1900, David Stern,
the relator, filed a petition alleging, in substance, that for
two years prior to said date and up to March 23, 1904, he
was engaged in the pawnbroking business at 514 W. Madison
street, in the city of Chicago, and had a lease of said prem-
ises expiring September 1, 1906.

Sections 1388 to 1391, both inclusive, and section 1405 of
an ordinance of the city of Chicago in regard to pawnbrok-
ers, are set out in full in the petition, and it is alleged that
petitioner procured a license, which, by its terms, would have
expired April 30, 1904, but that the defendant, Mayor of
said city, arbitrarily revoked the same; that, since May 1,
1904, petitioner has repeatedly applied to defendant for a
license, and tendered the required bond and license fee, and
offered to produce satisfactory evidence of petitioner's good
character, but that defendant refuses to issue a license to
him.   The bond referred to is attached to and made a part
of the petition.  A writ of mandamus commanding appel-
lant to receive petitioner's application, license fee and bond,
and issue a license to him, to expire April 30, 1905, is
prayed.

The answer of the defendant admits that the sections of
the ordinance set out in the petition were in force as in the
petition alleged, and that, prior to March 23, 1904, the re-
lator was a duly licensed pawnbroker, and that, at said date
the defendant revoked his license, sets out certain other sec-
tions of the ordinance relating to pawnbrokers, which will,
hereafter, be referred to, and avers that the relator, March
23, 1904, was convicted, before John T. Caverly, a justice
of the peace, in Chicago, of a violation of section 1397 of the
municipal code of Chicago, and fined $25, which was re-
ported by the superintendent of police to the defendant, who
thereupon revoked relator's license.

No replication was filed to the answer, the cause was heard

on evidence produced in open court, and the court awarded a peremptory writ of mandamus as prayed in the petition.

On the trial the following colloquy between court and counsel for defendant occurred:

The Court: "You will concede he is a man of good character, will you not?" Mr. Sullivan: "Yes." The Court: "It is conceded he is a man of good reputation, and that the sureties offered on the bond are sufficient."

The relator called John J. Ryan, a police officer in the detective department, who testified that he arrested L. M. Dudley, alias Giddings, and told Lottie Evans, from whom diamonds had been stolen, that he had arrested Dudley and she said he was her husband.

Jeremiah McCarthy, deputy city collector, called by the relator, testified that the relator, before the commencement of the suit, applied for a license to conduct a pawnbroking business at 514 W. Madison street, and tendered $300 and a bond, and a license was refused, because a license formerly held by him was revoked by Mayor Harrison. This was all the evidence introduced by the relator. The defendant then put in evidence the following sections of an ordinance of the city of Chicago:

"Section 1169. No license shall be granted for a longer period than one year, and every license, except saloon licenses, shall expire on the last day of April next following. Every license shall be signed by the mayor and countersigned by the clerk under the corporate seal.

"1392. *Record of Loans and Pledges.* Every pawnbroker and loan broker, or keeper of a loan office, shall keep a book in which shall be fairly written in ink, at the time of each loan, an accurate account and description, in the English language, of the goods, article or thing pawned or pledged, the amount of money loaned thereon, the time of pledging the same, the rate of interest to be paid on such loan, and the name and residence of the person pawning or pledging the said goods, article or thing. No entry made in such book shall be erased, obliterated or defaced.

"1396. *Report to Police.* It shall be the duty of every licensed person aforesaid to make out and deliver to the superintendent of police every day before the hour of twelve o'clock a. m., a legible and correct copy from the book required in section 1302 hereof, of all personal property and other valuable things received on deposit or purchased during the preceding day, together with the time, meaning the hour when received or purchased, and a description of the person or persons by whom left in pledge or from whom the same were purchased.

"1397. *Redemption of Pledge—When Prohibited.* No personal property received on deposit, purchase or pledge by any such licensed person shall be sold, or permitted to be redeemed or removed from the place of business of such licensed person, for the space of twenty-four hours after the copy and statement required to be delivered to the superintendent shall have been delivered, as required by the preceding section.

"1398. *Hours of Business.* No person licensed as aforesaid shall receive on deposit or pledge any personal property, or other valuable thing, before the hour of six a. m., nor after the hour of eight p. m. during the months of January, February, March, April, October, November and December of each year; nor before the hour of five a. m., nor after the hour of nine p. m. during the months of May, June, July, August and September of each year.

"1403. *Revocation of License on Police Report.* It shall be the duty of the superintendent of police to report to the mayor any failure to comply with any provision of this article, and the mayor may revoke the license of such person.

"1404. *Revocation of License on Conviction of Violation.* The mayor may forthwith revoke the license of any person who shall have been convicted before any police justice, or justice of the peace, of any violation of any provision of this chapter, whether the judgment of such justice shall have been appealed from or not.

"1165. *Mayor to Grant.* All licenses shall be granted

by the mayor from time to time, to such residents of the city of Chicago as he may deem proper.

"1167.  *Subject to Ordinances.*  All licenses shall be subject to the ordinances and regulations which may be in force at the time of issuing thereof, or which may subsequently be passed by the city council; and if any person so licensed shall violate any of the provisions thereof, he shall be liable to be proceeded against for any fine or penalty imposed thereby, and his license may be revoked in the discretion of the mayor.

"1170.  *Mayor's Discretion.*  In all cases where it is not otherwise expressly provided, the mayor shall have the power to hear and grant applications for licenses upon the terms specified by this ordinance; and all licenses shall be issued to such person or persons as shall comply in all respects with the provisions of this ordinance, and as the mayor in his discretion shall deem suitable and proper persons to be licensed."

Defendant also introduced a report of date March 17, 1904, by John J. Ryan and John J. Kelly, detective sergeants, addressed to Francis O'Neill, General Superintendent of Police, in substance, that February 29, 1904, they recovered from the possession of the relator, at his pawn shop, 514 W. Madison street, two diamond rings belonging to Lottie Evans, valued at $500; that the property was pawned by a man giving the name of L. M. Dudley; that they also found on Stern's books a breastpin belonging to Lottie Evans, which was pawned by the same man for $65; that they requested Stern to turn over the breastpin, but he stated that it had been redeemed a short time before; that, shortly afterward, they arrested Dudley, alias Giddings, and took him to Stern's pawnshop, and found the breastpin in Stern's possession, and that they secured a warrant and arrested Stern for violation of the pawn shop ordinances, and, March 16, he was fined $25 by Justice Caverly and appealed.

It appears by the evidence that this report was handed first to Andrew Rohan and John McWeeney, who sign themselves

"Lieut. Comm. Det. Bur.," and was by them referred to Francis O'Neill, General Superintendent of Police, "with recommendation that David Stern's license number 7 be revoked, as we regard him as an unfit person to have such license;" that the general superintendent approved the report, and that the defendant, March 23, 1904, revoked the license. It also appears from a certified copy of the proceedings before Justice Caverly, in City of Chicago v. David Stern, that March 16, 1904, the justice found Stern guilty of allowing the redemption of a pledge within twenty-four hours, in violation of section 1397 of the revised ordinances of the city of Chicago, and fined him $25.

Michael F. Sullivan, Assistant Corporation Counsel, for appellant; Edgar Bronson Tolman, Corporation Counsel, of counsel.

B. M. Shaffner, for appellee.

Mr. Justice Adams delivered the opinion of the court.

Counsel for the relator, on whom the burden rests of showing clear right to the writ of mandamus, contends that section 1397, set out at large in the preceding statement, is unconstitutional and unreasonable, in that it prohibits the redemption of pledges within twenty-four hours after delivery of the copy and statement required to be delivered to the superintendent of police by section 1396 of the ordinance, also quoted in the preceding statement, and cites, in support of this contention, Fulton v. District of Columbia, 2 App. Cases D. C. 431. In that case it appeared that the act of Congress authorized the commissioners of the District of Columbia "to make, modify and enforce usual and reasonable police regulations in and for said District as follows: First, for causing full inspection to be made, at any reasonable times, of the places where the business of pawnbroking, junk dealing, or second-hand clothing business may be carried on." The commissioners made regulations, section 3 of which is substantially the same as section 1397 of the ordinance in question. After the promulgation of the

regulations, Congress passed an act entitled "An act to reg-
ulate and license pawnbrokers in the District of Columbia."
Held, that the regulation made by the commissioners was
unreasonable, and that the act of Congress, under which the
regulation was made, was repealed by the latter act, which
was a revision of the entire subject-matter. The decision
supports, as we think, appellee's contention. But we must
be guided by the decisions in this State, as we understand
them. The question here is not, whether the appellant,
rightfully or not, revoked the relator's license, which expired
April 30, 1904, but whether appellant can be compelled by
mandamus to issue to him another license. The city of
Chicago is incorporated under the general municipal incor-
poration law, which confers the following powers: "To fix
the amount, terms and manner of issuing and revoking li-
censes." "To license, tax, regulate, suppress and prohibit
hawkers, peddlers, pawnbrokers, keepers of ordinaries, theat-
ricals and other exhibitions, shows and amusements, and to
revoke such license at pleasure." Hurd's Rev. Stat. 1903,
pp. 291, 292, clauses 4 and 41. It is not claimed that these
clauses are unconstitutional, but merely that the ordinance
is unconstitutional and unreasonable.

In City of Chicago v. Launder, 111 Ill. 291, a section of
an ordinance substantially the same as section 1396, was
passed on by the court. The appellant objected that the
section was "unreasonable, unjust and oppressive, and with-
out authority of law." The court, after referring to the
grant of power in clause 41 of section 62, above quoted, say:
"Under this grant of power, it is a matter purely discretion-
ary with the city authorities whether they will license and
regulate the business of pawnbrokers, or wholly prohibit and
suppress business by them within the city. In such case, if
the city grants a license, it may impose such conditions and
burdens as it may see fit," etc. The court further say: "In
this case, without a license the appellant had no right to en-
gage in the business of a pawnbroker within the city. He
sought for and obtained the city's license to transact such
business, and took the privilege his license conferred, subject

to the restrictions and burdens imposed by the ordinance under which, alone, it could issue. This was an unmistakable recognition and admission of the validity and binding force of the ordinance. By taking such license he secured immunity from prosecution for engaging in his vocation, if he conformed to the terms on which it was given him. The ordinance certainly did not invade any right of property or other right, but it conferred a right. Appellant having profited by taking a license, with full knowledge of the conditions imposed, can not refuse to carry out such conditions. We do not regard the ordinance as being 'unjust, unreasonable, tyrannical and oppressive.' The requirements objected to are but reasonable means to keep the pawnbrokers' business free from great abuse by thieves disposing of stolen goods in their shops. They are all made in the interest of the public, and are intended for the detection and prevention of crime. The ordinance is not tyrannical and oppressive, as the appellant was not bound to bring himself within its provisions. Before taking out license, appellant knew he had to keep a book containing an account and description of goods pawned, amount of money loaned thereon, the time of pledge, rate of interest, and the names of pledgors, and that such book must be kept open for the inspection of the mayor and any member of the police, and no objection seems to have been urged to these requirements, and it appears that appellant has always complied with them."

The relator, in his petition, avers that he tendered *"the required bond,"* and attaches to his petition and makes part thereof a copy of the bond tendered, and one of the conditions of the bond is that it is "subject to' revocation at the discretion of the mayor." Counsel for relator says that the relator's appeal from the judgment rendered by Justice Caverly suspended that judgment, a proposition wholly irrelevant in the present case, the question here being whether the mayor can be compelled by mandamus to issue to the relator another license. We may say of the proposition, however, that by section 1404 of the ordinance, the mayor is empowered to revoke the license of a pawnbroker who has been con-

victed by a police justice or a justice of the peace of any violation of the ordinance, whether the judgment shall or not have been appealed from. Were it otherwise, the power would, in most if not all cases, be inefficacious, as the offender, by appealing, might prevent revocation during the term of his license.

Counsel for appellee further says he cannot see why the revocation of his client's license should operate as a bar to the present application, especially as it was admitted that relator's character is good. Section 1170 of the ordinance provides: "All licenses shall be issued to such person or persons as shall comply, in all respects, with the provisions of this ordinance, and as the mayor, in his discretion, shall deem *suitable and proper persons to be licensed."*

It appears from the evidence that when the relator was requested by the police to produce a breastpin, which his books showed had been pawned by L. M. Dudley, he said it had been redeemed; but subsequently the officers found the breastpin in his possession. We cannot say the mayor erred in deciding that relator, who thus deliberately violated the ordinance, was not a fit or proper person to be licensed.

The judgment will be reversed.

*Reversed.*