416 So.2d 882 (1982)
David BLUDWORTH, As State Attorney, Fifteenth Judicial Circuit, Palm Beach County, Florida, Appellant,
v.
Jack ARCURI d/b/a A & B Auto Parts, Inc., Appellee.
No. 80-1607.
District Court of Appeal of Florida, Fourth District.
July 14, 1982.
*883 Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellant.
Joel M. Weissman of Law Offices of Ronald Sales, P.A., and Jerry Oxner of Oxner, Brown & Pickett, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
In an action brought by appellee for declaratory judgment the trial court held that section 812.055, Florida Statutes (Supp. 1978),[1] was unconstitutional in that it violated the fourth amendment of the United States Constitution[2] and article I, section 12 of the Florida Constitution.[3] We reverse.
The parties stipulated in the trial court that appellee was regulated by section 812.055, and that two law enforcement officers, one from Palm Beach County and one from another municipality in the county, demanded entrance to appellee's place of business to look for a stolen Mercedes automobile and were allowed to search the premises under protest by appellee who was under threat of arrest. The only issue before the trial court was the constitutionality of the statute. No evidence was presented other *884 than that to which the parties had stipulated.[4]
The rule is that warrantless inspections are unconstitutional in that they violate the fourth amendment. Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978).[5] Exceptions have been expressly recognized by the United States Supreme Court in Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor dealer); United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (gun dealer) and Donovan v. Dewey, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (stone quarry). A complete review of other federal as well as state court decisions, applying the rule as well as the exception in the subject businesses or in other industries, has been made by Judge Patel in his distinguished opinion in Rush v. Obledo, 517 F. Supp. 905 (N.D. Cal. 1981).
In Colonnade the relevancy of Justice Douglas's brief opinion does not lie in the disposition of the case,[6] but in stating that "Congress had broad power to design such powers of inspection under the liquor law as it deems necessary to meet the evils at hand." 397 U.S. at 76, 90 S.Ct. at 776. He went on to write: "We deal here with the liquor industry long subject to close supervision and inspection. As respects that industry, and its various branches including retailers, Congress has broad authority to fashion standards of reasonableness for searches and seizures." Id. at 77, 90 S.Ct. at 777.[7]
Justice White first authored the exception in Biswell, then later the rule in Marshall. In the former, he concluded that close scrutiny of interstate traffic in firearms was of central importance in preventing violent crime, that inspections are a crucial part of seeing that firearms be distributed "through regular channels and in a traceable manner," 406 U.S. at 315-16, 92 S.Ct. at 1596, and that inspections, to be a credible deterrent, must be unannounced and ever frequent. Finally, he said:
It is also plain that inspections for compliance with the Gun Control Act pose only limited threats to the dealer's justifiable expectations of privacy. When a dealer chooses to engage in this pervasively regulated business and to accept a federal license, he does so with the knowledge that his business records, firearms, and ammunition will be subject to effective inspection.
406 U.S. at 316, 92 S.Ct. at 1596. Later, in Marshall, 436 U.S. at 313, 98 S.Ct. at 1820, he said:
Certain industries have such a history of government oversight that no reasonable expectation of privacy, see Katz v. United States, 389 U.S. 347, 351-352, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), could exist for a proprietor over the stock of such an enterprise. Liquor (Colonnade) and firearms (Biswell) are industries of this type; when an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.
We would be burying our heads in the sand like the proverbial ostrich were we not to recognize that in Florida the evil at hand *885 is the theft of motor vehicles and that the Colonnade-Biswell exception conspicuously applies. We need only refer to the Department of Law Enforcement, 1981 Annual Report; Crime in Florida (released March 30, 1982), which is probably now in the office of each appellate judge in this state. Between 1977 and 1981 the crime of motor vehicle theft increased over 50%. Whereas in 1977 there were 29,680 motor vehicle theft offenses, with a value of $58,048,067, 22.1% of which were cleared, by 1981 the number of offenses had increased to 45,707 and the value to $163,376,167 with 18.2% cleared. Id. at 35. The rate of motor vehicle thefts per 100,000 population jumped from 340.5 to 452.6. Id. at 15.
By applying the exception to the rule, rather than the rule, we are not riding toward the sunrise, flying the banner of social consciousness, for that is not the function of this court. Nor are we falling into the forbidden mire recognized by Justice Rehnquist in his dissent in Donovan v. Dewey of approving a statute that authorizes unannounced, warrantless searches of any property reasonably thought to house unlawful activity. Instead, we are being asked to determine whether the action of the legislature, in seeking to repel a cancer which it has recognized and identified as attacking the constitutional right of each citizen of Florida to acquire, possess and protect property,[8] has constitutionally addressed itself to the means of repelling that cancer. We unquestionably think it has.
First, the application of section 812.055 is limited to those commercial enterprises that could be involved in the theft and disposition of stolen motor vehicles and parts; namely, junkyards, scrap metal processing plants, salvage yards, licensed motor vehicle dealers, repair shops, parking lots and parking garages. Second, the statute restricts physical inspection to normal business hours. Third, it narrows the purpose of the inspections to the location of stolen vehicles, the investigation of titling and registration of vehicles, or the inspection of wrecked or dismantled vehicles or records required by section 319.30, Florida Statutes (1979). Fourth, it works hand in glove with section 319.30, entitled "Dismantling, destruction, change of identity of vehicle; motor vehicle declared salvage," sub-section (6) of which requires any junkyard or salvage yard to keep records of all motor vehicles acquired as junk and gives the same right of inspection to the Department of Highway Safety and Motor Vehicles, as well as its agents and employees as section 812.055 gives to law enforcement officers. The constitutionality of sub-section (6) was upheld in Reynolds v. State, 383 So.2d 228 (Fla. 1980).[9]
*886 Based on the foregoing, we reverse the judgment of the trial court and remand for entry of judgment for appellant in accordance herewith.
REVERSED AND REMANDED.
DOWNEY, J., concurs.
LETTS, C.J., concurs specially with opinion.
LETTS, Chief Judge, concurring specially.
The case that convinces me that I should concur in the majority opinion, is the latest offering on the subject from our United States Supreme Court. See Donovan v. Dewey, supra. In Donovan the court, among other pronouncements, made it very clear that "unlike searches of private homes ... legislative schemes authorizing warrantless searches of commercial property do not necessarily violate [the Fourth] Amendment."
Nonetheless, I am wary of the particular statute now before us and somewhat restless with our decision. Moreover there are far greater "evil[s] at hand" in Florida than mere car theft. Immediately coming to mind are murder, rape and trafficking in drugs. Yet all three of these dastardly evils so far continue to merit Fourth Amendment protection. As a consequence I am not at all sure that the majority here is correct in confidently predicting that we are not falling into a "forbidden mire." However, it is not my prerogative to argue with the pronouncements of the highest court in the land.
NOTES
[1] Section 812.055 provides:

Physical inspection of junkyards, scrap metal processing plants, salvage yards, licensed motor vehicle dealers, repair shops, parking lots, public garages. 
(1) Any law enforcement officer shall have the right to inspect any junkyard, scrap metal processing plant, motor vehicle salvage yard, licensed motor vehicle dealer's lot, motor vehicle repair shop, parking lot, public garage, or other establishment dealing with salvaged motor vehicle parts.
(2) Such physical inspection shall be conducted during normal business hours and shall be for the purpose of locating stolen vehicles, investigating the titling and registration of vehicles, inspecting vehicles wrecked or dismantled, or inspecting records required in s. 319.30.
[2] The fourth amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[3] Section 12 provides:

Searches and seizures.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. Articles or information obtained in violation of this right shall not be admissible in evidence.
[4] Although the pre-trial stipulation does not expressly recite the precise nature of appellee's business, it appears that he was engaged in the buying and selling of automobiles.
[5] See also Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). In Camara the warrantless search of an objecting homeowner's premises based on the discretion of a municipal building code inspector was held to be a violation of the fourth amendment and See extended this concept to portions of commercial premises not open to the public.
[6] The majority opinion reinstates the trial court's decision which suppressed the evidence (liquor bottles) which were seized only after the federal agents broke and entered a locked storeroom without a warrant.
[7] The opinion also quotes Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), for the statement that "The seizure of stolen goods is authorized by the common law ... ." 397 U.S. at 76, 90 S.Ct. at 776.
[8] Art. I, § 2, Fla. Const.
[9] The right of police and "peace officers" to inspect the required records of junk dealers extends back at least to Chapter 6923, Laws of Florida (1915). In Newman v. Carson, 280 So.2d 426 (Fla. 1973), the court upheld the constitutionality of section 811.165, Florida Statutes (1970), which required dealers in junk and second-hand goods to maintain certain records and which authorized inspection at all times by police and peace officers. See also section 715.041, Florida Statutes (1979), entitled "Recovery of stolen property from pawnbrokers," which makes available to law enforcement agencies and officers upon request the required records of pawnbrokers and authorizes the recovery by law enforcement officers of stolen property from pawnbrokers. We have earlier alluded to the comprehensive marshaling of decisions of federal and state courts in Judge Patel's opinion in Obledo. To those we would add the following references involving warrantless inspections of businesses described in this opinion:

California
Cal.Vehicle Code § 2805 (Deering Supp. 1982); People v. Grey, 23 Cal. App.3d 456, 100 Cal. Rptr. 245 (1972); People v. Rosas, 1 Crim. No. 17702 (Cal. 1st Dist.Ct.App., Aug. 24, 1978) (unreported); People v. Percy, 109 Cal. App.3d 383, 167 Cal. Rptr. 279 (1980); People v. Lopez, 116 Cal. App.3d 600, 172 Cal. Rptr. 236 (1981).
New Mexico
Note, State v. Galio: An Administrative Search? 9 N.M.L.Rev. 419 (1979).
New York
People v. Pace, 111 Misc.2d 488, 444 N.Y.S.2d 529 (Sup.Ct. 1981).
Ninth Circuit
Lewis v. McMasters, 663 F.2d 954 (9th Cir.1981).
Finally, although not directly on point, see Federman v. State, Dept. of Business Regulation, Div. of Pari-Mutuel Wagering, 414 So.2d 28 (Fla. 3d DCA 1982), which upheld the constitutionality of Rule 7E-4.02(23), Florida Administrative Code. The rule provides:
The Florida State Racing Commission or the Steward representing the Florida State Racing Commission, investigating violations of law or the Rules of the Board, shall have the power to permit persons authorized by either of them to search the person, or enter and search the stables, rooms, vehicles and automobiles or other places within the track enclosure at which a race meeting is held, or other tracks or places where the horses eligible to race at said race meeting are kept, of all persons licensed by the Florida State Racing Commission and of all employees and agents of any race track association licensed by said Florida State Racing Commission; and of all vendors who are permitted by said race track association to sell and distribute their wares and merchandise within the race track enclosure, in order to inspect and examine the personal effects or property of such persons or kept in such automobiles, stables, rooms, vehicles, or other places as aforesaid. Each of such licensees, in accepting a license, does thereby consent to such search as aforesaid and waive and release all claims or possible actions for damages that he may have by virtue of any action taken under this rule. Each employee of a licensed race track association in accepting his employment, and each vendor who is permitted to sell and distribute his merchandise within the race track enclosure, does thereby consent to such search as aforesaid and waive and release claims or possible actions for damages as they may have by virtue of any action taken under this rule.