DANIEL S. PEARSON, Judge.
At issue on this appeal is the constitutionality of a county ordinance which, inter alia, imposes on persons who deal in secondhand goods containing precious metals the requirement that such goods be held for fifteen days before resale or other disposition.
The appellees, the plaintiffs below, are in the business of buying and selling secondhand goods.[1] They brought suit against the *9 County and others, seeking to have declared unconstitutional and to enjoin the enforcement of Section 21.29 of the Code of Metropolitan Dade County. The thrust of the appellees’ claim below was that the ordinance is an arbitrary and unreasonable exercise of police power; that it imposes an unlawful burden on interstate commerce; and, insofar as it regulates gold, is preempted under the Supremacy Clause (U.S. Const. Art. VI) by Congress’s enactment of the Gold Reserve Act of 1934 (31 U.S.C. §§ 440-449c (1976)).
The ordinance in question requires persons dealing in second-hand goods containing precious metals: to make and maintain records fully identifying the persons from whom items are purchased, the items themselves, and other particulars of the purchase; to submit these records to law enforcement authorities within a specified period of time; and to keep such records available for inspection. In addition, the ordinance prohibits the purchase of such goods from minors and provides:
“(c) Holding-period.
“(1) Items containing gold, silver, platinum or other precious metal and jewelry, diamonds, gems and other precious stones shall be held by secondhand dealer for a period of fifteen (15) days prior to sale, exchange or other disposition thereof. All other property covered by this section acquired in the course of a secondhand dealer’s business shall be held for a period of thirty (30) days prior to disposition thereof; provided, however, that the provisions of this subsection shall not be applicable when the person known by the secondhand dealer to be the true owner of any article desires to redeem, repurchase or recover such article at any time within the required hold period. The secondhand dealer shall keep a record of the proof of ownership presented by the true owners.”
The trial court declared the fifteen-day holding period unconstitutional, but upheld the constitutionality of the other provisions.[2] Thus, the trial court, by upholding the constitutionality of substantially all of the regulatory scheme of the ordinance, necessarily rejected the appellees’ claims that (1) under the Supremacy Clause, Congress’s enactment of the Gold Reserve Act of 1934 had pre-empted the right of the county to regulate gold, and (2) under the Commerce Clause, the regulation of precious metal, including gold, is solely a matter of national concern, see Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), or one which, requiring national uniformity, must remain free from interference by the county, see California v. Zook, 336 U.S. 725, 69 S.Ct. 841, 93 L.Ed. 1005 (1949); Cooley v. Board of Wardens, 12 Howard (53 U.S.) 299, 13 L.Ed. 996 (1851). Since the appellees have not cross-appealed that portion of the judgment adverse to them, we need only decide whether the fifteen-day holding period provision (1) is a valid exercise of the police power under Florida law, and (2) if valid under Florida law, is the burden imposed on interstate commerce by these provisions “clearly excessive in relation to the putative local benefits,” see Sporhase v. Nebraska ex rel. Douglas, - U.S. -, -, 102 S.Ct. 3456, 3463, 73 L.Ed.2d 1254, 1264 (1982); Minnesota v. Cloverleaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970).
*10 I.
Courts employ certain well-settled tests to determine the validity of legislation enacted for the protection of the public health, safety, welfare or morals. All legislation will be presumed constitutional if there is any reasonable theory to that end, Hamilton v. State, 366 So.2d 8 (Fla.1978); Golden v. McCarty, 337 So.2d 388 (Fla.1976); Bonvento v. Board of Public Instruction of Palm Beach County, 194 So.2d 605 (Fla.1967); legislation is valid if it may be reasonably construed as expedient for the protection of the public health, safety, welfare or morals, Newman v. Carson, 280 So.2d 426 (Fla.1973); where the police power is exercised in the area of economic regulation, it is valid if the “means utilized bear a rational or reasonable relationship to a legitimate state objective,” Belk-James, Inc. v. Nuzum, 358 So.2d 174, 175 (Fla.1978); and a court may not substitute its judgment as to the wisdom and policy of the law for that of the legislative body, Holley v. Adams, 238 So.2d 401 (Fla.1970); State v. Reese, 222 So.2d 732 (Fla.1969). The tests employed to determine the validity of an ordinance and a statute are nearly identical. See City of Miami v. Kayfetz, 92 So.2d 798 (Fla.1957); State v. Sawyer, 346 So.2d 1071 (Fla. 3d DCA 1977).
There can be little doubt that detecting and recovering stolen goods and deterring the ready marketability of such goods are legitimate governmental goals. See Newman v. Carson, 280 So.2d 426; Bludworth v. Arcuri, 416 So.2d 882 (Fla. 4th DCA 1983); City of St. Louis v. Liberman, 547 S.W.2d 452 (Mo.), cert. denied, 434 U.S. 832, 98 S.Ct. 116, 54 L.Ed.2d 92 (1977); Iscoff v. Police Commission of the City and County of San Francisco, 222 Cal.App.2d 395, 35 Cal.Rptr. 189 (1963). In Newman v. Carson, the Florida Supreme Court held that a statute requiring persons “engaged in the regular course of business of buying and selling junk” or “regularly buying and selling secondhand goods ... other than furniture and household goods or automobile parts” to maintain extensive records concerning the purchase and sale of such items was a valid exercise of the State’s police power. The statute before the court in Newman, even as the ordinance before us,
“indeed frustrates the sale of stolen merchandise and greatly enhances the possibility of return of these items to their rightful owners [and as such] is in the interest of public welfare and strikes at the basic evil of disposal by sale of illegally obtained merchandise.” Id. at 428-29.
Indeed, under the same rationale, it has been held to be a legitimate exercise of the police power to subject persons engaged in the business of the sale of salvaged motor vehicle parts to more stringent regulation in the form of warrantless searches of their business premises during business hours. See Bludworth v. Arcuri, 416 So.2d 882.
We think it clear that the imposition of a holding period before resale or disposition of second-hand goods bears the same rational and reasonable relationship to the legitimate objectives of deterring the sale of stolen goods and enhancing the possibility of the return of these items to their rightful owners as the record-keeping and war-rantless search measures which have heretofore gained approval by the courts of this state. As one law enforcement officer testified below:
“Q. What do you believe would be the impact if this ordinance were unenforcible [sic] as to the 15-day holding period?
“A. I believe we would see a skyrocketing of burglaries and we’d show a great loss of stolen property, of getting it back.
“Q. What purpose does the 15-day holding period serve?
“A. It enables us — it’s a time process period. There is a lot of time before we get a complaint. A lot of times our people may be on vacation for a week or ten days or two days. Even the fact *11 you’re just going out that night for a social party, they may come home the next morning and not discover until the afternoon jewelry missing. Then a report has to be made by uniformed police officers. By the time it, let’s say, goes through the secretaries and is typed up and gets into our hands, it’s usually the next day. By the time we go out and talk to the complainants, we’re talking about two or three days that elapse before we have a possibility of even knowing that we’re missing a diamond watch or whatever, to go out and look for it.
“This holding period gives us a time to go out and talk to our informants and everything else and see if there’s anyone that knows about this and possibly where it might have went.
“These people maintain this property. It gives us time to recover it. Without it, it would be gone the next day.
“Q. Is that recovery an important element? What purpose does the recovery of the stolen goods provide?
“A. The monetary value to the victims.
“Q. Does it have any effect upon the prosecution of the criminal?
“A. Of course it does.
“Q. What is that effect?
“A. It’s the evidence for the conviction of them.
“Q. Without that evidence what would be the result?
“A. Without that evidence? A lot of times we wouldn’t have any case at all.
“Q. So the ability to take that time for the crime to be reported, for the merchandise to be identified, for the police force to go out and search for the evidence, that time period is critical so that the evidence is not disposed of; is that correct?
“A. It’s one of the biggest tools we have.”
Another testified:
“A. The 15 days enables us to be able to — it does several things. When I receive a slip that I suspect property described on that slip to be stolen, I can go out and request to see the property and more or less obtain a description better than what the individual who purchased it wrote down, and with that information, I’m able to determine if it was taken out of a burglary.
“It also enables me to be able to have the victim take a look at it to see if they can identify it as being theirs. It also enables — and I think it’s the biggest thing to be able to recover property that has been stolen.
“Without the 15 days, if an item was purchased on day one, melted down on day one, there’s probably no recovery. “As far as prosecution, if there’s no other evidence against the individual who burglarized this victim’s home, without that evidence being held for 15 days, there’s no successful prosecution against that person.
“Q. You’re testifying that the item might not be around?
“A. Exactly. It would be melted down very quickly.
“Q. What do you base that on?
“A. Past experience prior to this ordinance coming into effect.”
While the trial court obviously doubted that a fifteen-day holding period was necessary to accomplish what it conceded to be a legitimate objective, it was not for it to say, as it did, that a seventy-two-hour holding period was sufficient to accomplish that objective. That, as we have said, is a legislative prerogative, and where the means of effectuating a legitimate governmental objective are called into question, a court’s role is limited to deciding whether the means utilized bear a rational or reasonable relationship to the objective. As the testimony so clearly reflects, the fifteen-day *12 holding period cannot be said to be irrational or unreasonable beyond a reasonable doubt. See A.B.A. Industries, Inc. v. City of Pinellas Park, 366 So.2d 761, 763 (Fla.1979) (“an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt”); Bonvento v. Board of Public Instruction of Palm Beach County, 194 So.2d 605, 606 (“unconstitutionality must appear beyond all reasonable doubt before an Act is condemned”). That being the case, the trial court erroneously substituted its judgment for that of the County’s legislative body.[3]
II.
Having decided that the ordinance in question constitutes a valid exercise of the police power under Florida law, we turn to the question of whether the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.
Our inquiry here is whether the means chosen by the County will actually effectuate the governmental objective or are illusory. If the means chosen will effectuate the objective, then even if a burden on interstate commerce exists, if the burden is not clearly excessive in relation to the putative local benefits, the ordinance is valid. Compare Cities Service Gas Co. v. Peerless Oil & Gas Co., 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190 (1950) (state corporation commission permitted by statute to issue orders setting minimum well head price not unconstitutional; valid state purpose to prevent rapid and uneconomic dissipation of one of state’s chief natural resources clearly outweighed any minimal burden on gas prices), and Minnesota v. Cloverleaf Creamery Co., 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (court upheld Minnesota statute banning retail sale of milk in containers with more than fifty per cent plastic content, recognizing as legitimate the state’s purpose to promote conservation and ease solid waste disposal problems, and finding that the burden on interstate commerce was not clearly excessive in relation to the putative local benefits), with Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) (Iowa statute restricting truck lengths held unconstitutional where the state’s safety argument was not supported by evidence sufficient to outweigh the clear burden on interstate commerce, and the state’s purpose to preserve the roads was rejected because it was being done at a cost to other states).
The evidence in the record establishes that the fifteen-day holding period of the ordinance is consonant with the realities of police investigations in the fast lane of a large metropolitan area such as Dade County, Florida. On the other hand, the record before us contains no evidence to establish that interstate trade in secondhand precious metals was made impossible or impractical by the holding period, that the holding period rendered the appellees unable to sell merchandise after the period expired, or that the price of precious metals fluctuates wildly and rapidly on a day-to-day or even a week-to-week basis. Mere evidence that there is considerable interstate trading and dealing in precious metals, combined with the mere assertion that precious metals prices rise and fall, sometimes mercurially, does not make the burden imposed on interstate commerce clearly excessive in relation to the putative local benefits of the ordinance. In a word, the trial court’s determination that the appellees would suffer an *13 undue economic burden and that the burden on interstate commerce would be excessive is unsupported by the evidence and is pure speculation.[4]
Accordingly, we hold that Section 21.29 of the Code of Metropolitan Dade County is constitutional and reverse the judgment of the trial court which permanently enjoined Dade County from enforcing the fifteen-day holding period provided therein.
Reversed.

. Although the appellees actually buy and sell second-hand goods commercially, the definition of “secondhand dealer” in the ordinance, see Code of Metropolitan Dade County, § 21.-29(a)(1), is broad enough to embrace the avocational or casual buyer and seller.

. The appellees also sought to have Section 812.051, Florida Statutes (1981), declared unconstitutional and to enjoin the enforcement thereof on the same grounds. The trial court declared unconstitutional a similar fifteen-day holding period contained in the statute, see § 812.051(5), but upheld the constitutionality of the other provisions. The County’s appeal concerns the ordinance only.

. The mere fact that a ninety-six hour holding period passes constitutional muster, see Medias v. City of Indianapolis, 216 Ind. 155, 23 N.E.2d 590 (1939), overruled in part, City of Indianapolis v. Sablica, 342 N.E.2d 853 (Ind. 1976), does not, as the trial court apparently believed, fix the outer limits of constitutionality. Indianapolis in 1939 is hardly Dade County in the 1980’s. See also Harrison v. People, 121 Ill. App. 189 (1905) (twenty-four hour holding period valid). By the same token, a finding that a thirty-day holding period is reasonable, see Goodman v. Youngstown, 24 Ohio Law Abstracts 696 (1937), does not, ipso facto, make a lesser holding period in a different era and place reasonable.

. In reaching its decision, the trial court was heavily influenced by an opinion by Judge Charles Scott, Mid-Florida Coin Exchange, Inc. v. Griffin, 529 F.Supp. 1006 (M.D.Fla.1981), preliminarily enjoining the State from enforcing Sections 812.049 and 812.051, Florida Statutes (1981). Judge Scott found that the plaintiffs, precious metal dealers, would likely succeed on their claims that the statutes in question were unconstitutional because, among other reasons, the fifteen-day holding period found in Section 812.051(5) imposed a burden on interstate commerce clearly excessive in relation to the putative local benefits of the ordinance. We point out first, that Judge Scott’s decision was rendered on the allegations of the pleadings and without the benefit of evidence, and second, that the putative local benefits, against which the burden of interstate commerce must be measured in the present case, are the benefits to Dade County, not to the entire State of Florida.